## CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY *v.* UNITED STATES.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF IOWA.

No. 47. Argued April 16, 17, 1895. — Decided October 21, 1895.

Congress, in the grant made by the act of May 12, 1864, 13 Stat. 72, had in view two railroads, one extending from Sioux City to the Minnesota line, the other from South McGregor by a named route to a point of intersection with the Sioux City road; and the Chicago, Milwaukee & St. Paul Railway Company, as the successor in right of the McGregor Company, is in no position to question the decree just affirmed in *Sioux City & St. Paul Railroad Company* v. *United States*, establishing the title of the United States as against the Sioux City Company, and is estopped by the decree in *Sioux City & St. Paul Railroad* v. *Chicago, Milwaukee & St. Paul Railway*, 117 U. S. 406, from making any claim whatever to the lands in controversy in this suit.

Neither of the railroad companies named in said act of May 12, 1864, could get the benefit of the moiety of lands granted for the building of the other, in the overlapping limits of the two roads, by reason of the failure of the other to construct its road.

THE case is stated in the opinion.

*Mr. W. H. Norris* for appellant.

*Mr. Assistant Attorney General Dickinson* for the United States.

*Mr. William Lawrence* for homestead and preëmption claimants,

MR. JUSTICE HARLAN delivered the opinion of the court.

After the Circuit Court had announced its conclusions in the case of *Sioux City and St. Paul Railroad Company* v. *United States*, just decided, the Milwaukee company obtained leave to intervene as a defendant, and by cross-bill assert its right to the lands in Dickinson and O'Brien Counties, originally patented to the State of Iowa for the use of the Sioux City and St. Paul Railroad Company, and *within the conflicting place limits of the two roads*, but which the State held and never conveyed to that company; and which the court below found to be the property of the United States as against the Sioux City company and the trustees in the mortgages executed by it.

Such a cross-bill was filed before the entry in the court below of a final decree on the original bill, and the cause was left undetermined as to the claims asserted by the Milwaukee company in its cross-bill.

Benjamin Olson, Peter Anderson, and others, parties defendant in the original suit, intervened, with leave of the court, as defendants, and, by a cross-bill against the Milwaukee company and the Sioux City company, asserted rights to portions of the lands in controversy — having settled, they alleged, on such lands, under the laws of the United States, between the years 1881 and 1887, and made valuable improvements thereon.

The United States answered the cross-bill of the Milwaukee company, and also filed an amended bill, in which it prayed that by final decree its title to the lands awarded to it by the original decree as against the Sioux City company, be established and quieted as against the Milwaukee company.

The court below rendered a decree in favor of the United States on this amended bill, and dismissed the cross-bill of the Milwaukee company.

The cross-bill of Olson and others was dismissed without prejudice. This was done because the pleadings presented no issue as between the settlers and the United States; the cross-bill of the settlers being against the railroad companies only.

We are of opinion that the appellant has no reason, in law, to complain of the decree of the Circuit Court.

Although the act of May 12, 1864, would, if its title alone were consulted, furnish some slight ground for the contention that the object of the grant therein was to aid in the construction of " a railroad," its provisions plainly show that Congress had in view two railroads; one extending from Sioux City to the Minnesota line; the other from South McGregor, by a named route, to a point of intersection, in the county of O'Brien, with the Sioux City road.

The grant was of every alternate section, designated by odd numbers, for ten sections in width, " on each side of said roads," and, therefore, for the benefit of the roads separately. As decided in the other case, no part of the lands granted in aid of the construction of one road could be applied in aid of the other road. The act is to be interpreted as if Congress by one act made a grant to the State in aid of the construction of the Sioux City road on the route designated, and, by another and separate act, passed at the same time, made a grant to the State in aid of the construction of the other road from South McGregor to a point of intersection with the Sioux City road.

It appeared in the original case, and appears in the present case made by the cross-bill of the Milwaukee road — and Congress, in requiring an intersection of the two roads, must have anticipated such a condition of things — that because of the conflict between the two grants, it was impossible to set apart for each road every alternate odd-numbered section for ten sections in width on each side of every part of its located line. Consequently, in the suit brought against the Sioux City company by the Milwaukee company as the last successor to the McGregor Western Railroad Company, by a final decree framed pursuant to the directions given by this court in *Sioux City & St. Paul Railroad* v. *Chicago, Milwaukee & St. Paul Railway*, 117 U. S. 406, the lands within the conflicting lines were, prior to the institution of the present suit, partitioned between the two companies.

The claim of the Milwaukee company now is, that it is

entitled, under the act of May 12, 1864, to the lands involved in the present controversy, although by the decree in *Sioux City & St. Paul Railroad* v. *Milwaukee & St. Paul Railway,* and which is conclusive between those companies, they have been withheld from it upon the specific ground that they were never granted by Congress to aid in the construction of the McGregor or Milwaukee road, but were granted in aid of the construction of the Sioux City road and for no other purpose. If, as matter of law and fact, these lands were never granted for the benefit of the Milwaukee road, but were granted in aid of the construction of the Sioux City road, and for no other purpose, they could never — consistently with the act of Congress — have been used by the State for the benefit of the Milwaukee road. *Sioux City & St. Paul Railroad* v. *United States, ante,* just decided.

It is, therefore, of no concern to the Milwaukee company, as the successor in right of the McGregor company, what was done with them by the State, nor whether the United States legally reacquired title to them as against the Sioux City company. It is in no position to question the decree on the original bill establishing the title of the United States as against the Sioux City company, and it is estopped by the decree in the suit which it brought to make any claim whatever to these lands. If, as has been conclusively adjudged, the Milwaukee company was without title or claim as against the Sioux City company, no rights could subsequently accrue to it by reason of the decree declaring that these lands reverted to the United States by reason of the failure of the Sioux City company and of the State to construct the road over the entire route from Sioux City to the Minnesota line. As these lands were set apart exclusively for the construction of the Sioux City road, no failure to construct that road by the State or by the corporation charged with the duty of building it, could, in any case, without the assent of Congress, justify their being applied in aid of the construction of another and distinct road.

The defendant rests its claim in part upon the act of the Iowa legislature of February 27, 1878, c. 21. By that act

the State resumed all lands and rights theretofore granted to the McGregor and Sioux City Railway Company, the immediate successor of the McGregor Western Railroad Company, and conferred upon the Chicago, Milwaukee and St. Paul Railway Company (which succeeded, in right, the McGregor and Sioux City Railway Company) "all lands and rights of lands, whether in severalty, jointly, or in common, and including all lands or rights to lands or any interest therein or claims thereto, whether certified or not, embraced within the overlapping or conflicting limits of the two grants or roads made and described by the act of Congress hereinafter designated, [the act of May 12, 1864,] granted to the State of Iowa to aid in the construction of a railroad" from South McGregor to intersect with the road from Sioux City to the Minnesota line. It is contended that when it became certain that the Sioux City company had, by failure to construct its road within the time specified by the act of Congress, lost *its* right to the lands, the State, to which they had been patented specifically for the use and benefit of the Sioux City road, could pass to the Chicago, Milwaukee and St. Paul Company the title to any lands within the overlapping limits, that had not been, and could not, nor would not, be applied to the Sioux City road.

This position cannot be sustained upon any theory that would be consistent with the act of Congress. As we have already said in *Sioux City & St. Paul Railroad* v. *United States,* the grant of an equal undivided moiety of lands in the overlapping limits of two roads was a grant for the benefit of each road, of the particular moiety of lands dedicated by the act of Congress to its construction. Neither road could get the benefit of the moiety of lands granted for the building of the other road, by reason of the failure of the company constructing the latter road to earn *its* moiety of the lands. This results from the explicit declaration by Congress of the purposes for which the lands were to be used, and by express words, excluding all others. The provision that the lands "hereby granted shall be disposed of by said State for the purposes aforesaid only," precludes the idea that the State

could, without a breach of trust, apply lands for the benefit of one road that had been granted to aid the construction of another road.

Besides, it is manifest from the face of the act of the Iowa legislature of 1878 that there was no purpose to give the Milwaukee or McGregor road the benefit of any lands not granted to aid in its construction. For the language of that act was that " when said railroad [the McGregor road] shall have been built and constructed to the point of connection with the Sioux City and St. Paul Railroad, then and thereupon the governor of this State shall patent and transfer 'to said Chicago, Milwaukee and St. Paul Railway Company all' the remaining lands belonging to or embraced in said grant *appertaining to their line of railroad,* including all or any part or moiety of the lands in said overlapping limits which, by the terms of said act of Congress, *appertain to their line of road.*" § 3.

It having been finally adjudged as between the Sioux City company and the Milwaukee company that these lands did not appertain to the latter road, there is no foundation for a suit by the Milwaukee company to compel the United States to surrender any title it may have or claim, however such title may have been acquired.

*Decree affirmed.*